Rufus DAWSON, Plaintiff,

v.

FERNLEY & EGER, Defendant.

Walter FENTRESS, Libellant,

v.

The SS PIONEER GLEN, Respondent.

Roosevelt LOGAN, Plaintiff,

v.

SAN FERNANDO COMPANIA,
Defendant.

William LUNDY, Plaintiff,

v.

Albert SCHJELDERUP, Defendant.

Clarence GATLIN, Plaintiff,

v.

TRANSAMERICAN STEAMSHIP
CORP., Defendant.

Civ. A. No. 3250,

Admiralty No. 8116,

Civ. A. Nos. 3534, 3491, 3432.

United States District Court
E. D. Virginia,
Norfolk Division.

Aug. 11, 1961.

Sidney H. Kelsey, Norfolk, Va., for plaintiffs.

Steingold, Steingold, Chovitz & Boyce, Norfolk, Va., for libellant.

Seawell, McCoy, Winston & Dalton, Norfolk, Va., for defendants.

WALTER E. HOFFMAN, District Judge.

These actions, not consolidated for trial, involve substantially the same issues with respect to the defenses of limitation of actions and laches. For the purposes stated herein, the ruling of the Court will be applicable to each case, but separate orders will be entered and a copy of this memorandum will be made a part of the record in each case.

### Dawson v. Fernley & Eger

In Dawson, the plaintiff-longshoreman filed his complaint on July, 12, 1960, alleging that he was injured on July 17, 1957, when the defendant, as owner and operator of the SS Ferncliff, breached its contractual warranty of seaworthiness and plaintiff was caused to slip or fall into a space between bags of cargo, thereby sustaining injuries. By an amended complaint filed February 25, 1961, plaintiff alleges that there has been no undue prejudice to defendant, and that there was excusable delay in bringing the action as plaintiff was receiving compensation payments until approximately November, 1959. Defendant contends that the action is time-barred under the laws of the State of Virginia and is otherwise barred by the principle of laches.

Thus we have a civil action instituted under the diversity of citizenship statute, 28 U.S.C.A. § 1332, five days prior to the expiration of three years from the date the cause of action arose. The complaint does not allege negligence and recovery is sought on the contractual theory of a breach of warranty of seaworthiness.

## Fentress v. SS Pioneer Glen

■ The libel in this case was filed on the admiralty side of the court on July 13, 1960. It alleges that the libellant-longshoreman was injured on or about December 10, 1957, while assisting in loading the respondent vessel. Unseaworthiness and negligence are stated as the basis of the action. Respondent has moved to dismiss on the grounds that there is no inexcusable delay in filing the action and that respondent would be materially prejudiced by being required to defend the action after a period of more than two and one-half years. A supplementary libel alleges that respondent had notice of libellant's injury and that the Jones Act, 46 U.S.C.A. § 688 applies, thus giving three years within which to file the action. It should be noted that the libellant was a longshoreman, employed by Southern Stevedoring Corporation—the stevedore—and no employment arrangement existed between libellant and the respondent. A hearing on the laches question was conducted and will be the subject of comments hereinafter made. Libellant's claim for maintenance and earned wages is, of course, not maintainable against the vessel or its owner as libellant is a longshoreman.

## Logan v. San Fernando Compania

Plaintiff-longshoreman filed this civil action on April 3, 1961, alleging that he was injured on November 7, 1958, due to the unseaworthiness of the defendant's vessel, the SS Kronos. Jurisdiction is said to exist by reason of diversity of citizenship and the amount in controversy. The amended complaint alleges both unseaworthiness and negligence of the ship's officers and crew. Defendant shipowner urges that the action is time-barred under the laws of the State of Virginia and is otherwise barred by the principle of laches.

## Lundy v. Albert Schjelderup

Plaintiff-longshoreman filed this civil action on March 1, 1961, alleging that he sustained injuries on May 13, 1958, due to the unseaworthiness of the defendant's vessel, the SS Trudvang. Jurisdiction is again predicated upon diversity of citizenship and the amount in controversy. The claimed unseaworthiness of the vessel refers to a defective payloader, apparently owned and brought aboard the vessel by the stevedore for whom the plaintiff worked.

## Gatlin v. Transamerican Steamship Corp.

In this civil action the plaintiff-longshoreman filed his complaint on January 13, 1961, alleging that he sustained injuries on July 19, 1958, due to the negligence of the defendants and the unseaworthiness of defendants' vessel, the SS Transcaribbean. It is apparent from the pleadings that plaintiff was not employed by the defendants, but no contention is made that the Jones Act applies. Here, also, the defendants contend that the action is time-barred under Virginia law and by the application of the doctrine of laches.

## Discussion

In each of these cases the cause of action (or accident) occurred in Virginia. The pertinent statutes of Virginia are § 8–13 and § 8–24 of the Code of Virginia, 1950, as amended. Section 8–13, to the extent that it may be applicable, reads as follows:

> "Every action to recover money which is founded upon an award, or on any contract, other than a judgment or recognizance, shall be brought within the following number of years next after the right to bring the same shall have first accrued, that is to say:

> \* \* \* \* \* \*

> "If it be upon any other contract express or implied within three years \* \* \*."

Turning to § 8–24, we find:

> "Every action for personal injuries shall be brought within two years next after the right to bring the same shall have accrued. Every personal action, for which no limitation is otherwise prescribed, shall be brought within five years next after the right to bring the same shall have accrued, if it be for a matter of such nature that in case a party die it can be brought by or against his representative; and, if it be for a matter not of such nature, shall be brought within one year next after the right to bring the same shall have accrued. The amendment extending the period within which an action for personal injuries may be brought under this section to two years shall not apply to any cause of action arising prior to July one, nineteen hundred fifty-four."

The several inquiries before the Court may be summarized as follows:

(1) Is a longshoreman's claim for personal injuries alleging unseaworthiness grounded in tort or contract?

(2) Assuming arguendo that a longshoreman's claim for personal injuries predicated upon an allegation of unseaworthiness sounds in contract at the option of the plaintiff, what is the effect of § 8–24 of the Code of Virginia, 1950, as amended in 1954?

(3) Should the Court look to the state statute as a bar in a *civil* action instituted by a longshoreman, or should the Court apply the admiralty principle of laches where the accident is of a maritime nature?

(4) Does a longshoreman, employed by a stevedore who is engaged in loading or unloading a vessel, have a right to sue under the Jones Act in an action instituted against the shipowner or operator?

█ That a longshoreman has no right to sue under the Jones Act, absent a specific contract of employment with the shipowner, is obvious from a study of the decisions and legislative history of the Jones Act and Longshoremen's & Harbor Workers' Act, 33 U.S.C.A. § 901 et seq. In 1926, twenty years prior to the celebrated decision in Seas Shipping, Inc. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, the Supreme Court held that the Jones Act applied to longshoremen. International Stevedoring Co. v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157. In so doing the Court expressed what it thought to be the will of Congress when it said:

> "We cannot believe that Congress willingly would have allowed the protection to men engaged upon the same maritime duties to vary with the accident of their being employed by a stevedore rather than by a ship. The policy of the statute [Jones Act] is directed to the safety of the men and to treating compensation for injuries to them as properly part of the cost of the business. If they should be protected in one case they should be in the other. In view of the broad field in which Congress has disapproved and changed the rule introduced into the common law within less than a century, we are of opinion that a wider scope should be given to the words of the act, and that in this statute 'seamen' is to be taken to include stevedores employed in maritime work on navigable waters as the plaintiff was, whatever it might mean in laws of a different kind."

The Haverty decision provoked immediate action by Congress through the passage of the Longshoremen's & Harbor Workers' Act in 1927. The Supreme Court having rendered the stevedore amenable to an action under the Jones Act for an injury to a longshoreman-employee, Congress took away this judicially created right within six months thereafter. 33 U.S.C.A. §§ 903, 905. Now it is clear that longshoremen, whether injured aboard ship or on land, have no right of action under the Jones Act as they are not members of the crew of a vessel plying in navigable waters. Swanson v. Marra Bros., 328 U.S. 1,

66 S.Ct. 869, 90 L.Ed. 1045. The Jones Act does not support a suit by a ship worker against a shipowner for negligence, even if the ship worker be deemed a seaman *pro hac vice,* because actions under the statute are maintainable only by employees against their own employer. Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692; Blankenship v. Ellerman's Wilson Line New York, Inc., 4 Cir., 265 F.2d 455.

■ We turn to the question as to whether the longshoreman's claim for personal injuries alleging unseaworthiness is contractual or should be limited by conceptions of negligence. Since 1946, it has been recognized that a longshoreman stands in the shoes of the seaman for the purpose of relying upon the warranty of seaworthiness. Seas Shipping, Inc. v. Sieracki, supra. But Sieracki does not hold that the relationship between the longshoreman and shipowner is contractual and, indeed, the obligation to provide a seaworthy vessel for the longshoreman is imposed merely as an incident of the relationship and not because of the seaman's contract. 328 U.S. 85, at pages 89, 90–97, 66 S.Ct. 872, at pages 875–879. The text writers and cases amply support the view that actions to recover for personal injuries, whether based upon negligence or unseaworthiness, have generally been assumed to fall within the tort statute covering personal injury actions. Gilmore and Black, The Law of Admiralty, § 9–81, p. 634; Norris, Maritime Personal Injuries, § 28, pp. 66, 67; Wilson v. Northwest Marine Iron Works, 9 Cir., 212 F.2d 510; Kane v. Union of Soviet Socialist Republics, 3 Cir., 189 F.2d 303; Redman v. United Fruit Co., 2 Cir., 185 F.2d 553; Redman v. United States, 2 Cir., 176 F.2d 713; Morales v. Moore-McCormack Lines, Inc., 5 Cir., 208 F.2d 218.

■ We think it clear from these authorities that, wherever it is necessary to so determine, a longshoreman's claim against the shipowner for personal injuries predicated upon a breach of warranty of seaworthiness must be governed by the law of tort in the absence of an express contract between the shipowner and longshoreman.

An examination of LeGate v. The Panamolga, 2 Cir., 221 F.2d 689, fails to lead to a contrary conclusion. This was an admiralty action and, while there is some language in the opinion suggesting that a claim for unseaworthiness may be contractual in nature, the court expressly avoids this question by relying upon the anticipated interpretation of the analogous statute by the New York Court of Appeals. As laches is the determinative question in admiralty, the court, applying New York law, held that the unseaworthiness claim would be predicated upon the implied contract theory.

■ If we are called upon to resolve this issue on the law of Virginia, it clearly appears that the 1954 amendment to § 8–24 of the Code of Virginia, 1950, would place a claim for personal injuries based upon unseaworthiness within the field of tort liability. Prior to 1954 Virginia provided that, as to all actions not surviving, the one year limitation applied, thus incorporating by inference and legal decision all tort actions. However, in 1954, Virginia provided that "every action for personal injuries shall be brought within two years after the right to bring the same shall have accrued." Thus, whether the action be in tort or contract, if the object of the same is to recover for personal injuries, the statute is now two years. In Birmingham v. Chesapeake & Ohio Railway Co., 98 Va. 548, 37 S.E. 17, more recently cited with approval in Herndon v. Wickham, 198 Va. 824, 97 S.E.2d 5, it is said:

"The limitation is not determined by the form of action, but by its object. If the thing complained of is an injury to the person, the limitation in *assumpsit* is the same as if the action were in form *ex delicto.*"

The 1954 amendment casts some doubt as to the vitality of the decision in Colonna v. Rosedale Dairy Co., 166 Va. 314, 186 S.E. 94, where the court dismissed the count in tort but upheld the right to sue

the milk dealer on an implied warranty. We do not believe that, even assuming the continuing force of the Colonna decision, Virginia would hold that an action for a longshoreman's personal injuries, predicated upon unseaworthiness alone, would be governed by the three year statute as prescribed in § 8–13. The warranty of seaworthiness as extended to the longshoreman is, as heretofore noted, not contractual in nature, but is merely an incident of the relationship of the parties, namely, the shipowner with the longshoreman who performs duties traditionally done by the seaman. For this reason it follows that § 8–24 of the Code of Virginia would be applicable in Virginia for a claim of this nature as to any action instituted in Virginia. Moreover, it is apparent from the authorities that the limitation period under Virginia law must be the guidepost in determining whether laches should be applied.

The Court is not unmindful of the persuasive opinions of Judge Wright in Daniels v. States Marine Corporation of Delaware, D.C., 184 F.Supp. 815, and Seals v. States Marine Lines, Inc., D.C., 188 F.Supp. 398, in which the period of limitation for an injured longshoreman was fixed at three years under analogy to the Jones Act. The basic reasoning in these cases appears to be (1) a desire for uniformity and the avoidance of forum shopping, (2) the fact that the longshoreman performs the traditional work of a seaman, and (3) the decision in McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 226, 78 S.Ct. 1201, 2 L.Ed.2d 1272. Judge Wright expresses the view that claims of longshoremen based on general maritime law are governed by the three year limitation applicable to the Jones Act, as it would be anomalous to hold that a person doing seaman's work would not have the same period of time within which to file a suit as that reserved to seamen. With great respect for the learned jurist who has so ruled, this Court must disagree.

There is nothing in McAllister v. Magnolia Petroleum Co., supra, which commands such an interpretation. While there has been a tendency to cloak the longshoremen with all rights applicable to seamen, this is a misconception of the longshoreman's rights granted to him under Seas Shipping, Inc. v. Sieracki, supra. As heretofore discussed, the analogy between longshoremen and seamen as dictated by Sieracki is due merely to the incidents surrounding the relationship of the parties. Save and except the longshoreman's right to rely upon the general maritime law, and more especially the warranty of seamanship, there remain many distinguishing features. For example, a seaman may prosecute his action without the prepayment of costs, but the longshoreman does not have this right in the absence of authority to proceed in *forma pauperis*. 28 U.S.C.A. § 1916. The same situation exists with respect to an appeal. The seaman is entitled to maintenance and cure from the shipowner, but the rights of a longshoreman are restricted to benefits from his employer— the stevedore—under the Longshoremen's and Harbor Workers' Act. The effect of the decision from the Eastern District of Louisiana would substantially nullify the Congressional action of 1927 when the legislative branch of our Government saw fit to withdraw the longshoremen from the benefits of the Jones Act. There is no more reason to hold that a longshoreman's period of limitation is governed by the Jones Act than there is to conclude that a longshoreman may maintain an action under the Jones Act, which admittedly he cannot do since Congress acted to overturn International Stevedoring Co. v. Haverty, supra. See Swanson v. Marra Bros., supra. The McAllister decision resolves only the problem that, where alternative grounds of recovery under the Jones Act are alleged and the claims of negligence and unseaworthiness must be asserted in a single action under the principle enunciated in Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069, a state statute restricting the right of recovery for unseaworthiness cannot be for a lesser period than the time fixed by the Jones Act. True, there is language

in the separate concurring opinion of Mr. Justice Brennan which supports the theory that forum shopping should be avoided and that there should be uniformity of enforcement of maritime rights, but it should be noted that McAllister involved a seaman and not a longshoreman. Moreover, the majority opinion apparently took cognizance of the state statute of limitations, but held it not to be applicable in this particular situation where the limitation period for unseaworthiness under the Jones Act was less than the period fixed by federal statute for negligence.

Another far-reaching effect of Daniels v. States Marine Corporation of Delaware, supra, would be that, by this holding, longshoremen may be given a greater period of time within which to proceed than that afforded to seamen by the Jones Act. In states where the limitation period is greater than three years, it certainly cannot be said that an action by a longshoreman is barred by the period of three years as prescribed by the Jones Act, for the longshoreman is not permitted to sue under this Act.

Even in the Fifth Circuit where the Daniels case arose, there is doubt as to the correctness of this decision. In the recent case of Vega v. SS Malula, 5 Cir., 291 F.2d 415, brought on the admiralty side of the court, it is said:

> "From the [longshoreman's] approach this is the way the choice-of-laws maze runs. The libel having been instituted in Florida and there being no applicable federal statute, the statutes of limitations in that state will determine whether the action is time-barred."

After acknowledging the fact that the guiding period of limitations was under Florida law, the Court proceeded to comment upon the application of laches as follows:

> "We think all have been too mechanically preoccupied with the element of delay in the sense of time beyond some applicable statute of limitations. No attention has been paid to the equally important element of harm from the delay. 'Laches is much more than time. It is time plus prejudicial harm, and the harm is not merely that one loses what he otherwise would have kept, but that the delay has subjected him to a disadvantage in asserting and establishing his claimed right or defense.' Point Landing, Inc. v. Alabama Drydock & Shipbuilding Co. [5 Cir.], 1958, 261 F.2d. 861, at 865."

In the admiralty action of Czaplicki v. The SS Hoegh Silvercloud, 351 U.S. 525, at page 533, 76 S.Ct. 946, 951, 100 L.Ed. 1387, the Supreme Court discussed the question of laches and pointed out:

> "This does not mean, of course, that the state statutes of limitation are immaterial in determining whether laches is a bar, but it does mean that they are not conclusive, and that the determination should not be made without first considering all the circumstances bearing on the issue."

■ For the reasons stated, it is the view of this Court that the state statutes of limitations furnish the touchstone in determining whether the longshoreman's claim is time-barred.

The various defendants in the civil actions insist that the state statute of limitations is a complete bar to the claims of the longshoremen, and that the principle of laches is applicable only when the action is commenced in admiralty. They say that, since the plaintiff-longshoreman elected to proceed in a civil action with its attendant right to demand a trial by jury, the longshoreman must accept the burden of the period of limitations fixed by the law of the forum state. The question is left open in McAllister where, in footnote 5, the Court comments (357 U.S. 221, 224, 78 S.Ct. 1201, 1204):

> "The question of which limitation a state court must apply was reserved in Engel v. Davenport, 271 U. S. 33, 36 [46 S.Ct. 410, 411, 70 L.Ed.

813]. Lower courts are divided on the related question of which principles govern the limitation of admiralty actions on the law side of the federal court. Compare Henderson v. Cargill, Inc. [D.C.], 128 F. Supp. 119; Apika [Apica] v. Pennsylvania Whsg. & Safe Deposit Co. [D.C.], 74 F.Supp. 819; Id., D.C., 101 F.Supp. 575; Untersinger v. Keystone Tankship Corp., 1948 A.M. C. 1899; with Bonam v. Southern Menhaden Corp. [D.C.], 284 F. 360; Oroz v. American President Lines [D.C.], 154 F.Supp. 241."

Exactly the same inquiry confronted the court in Oroz v. American President Lines, 2 Cir., 259 F.2d 636, certiorari denied 359 U.S. 908, 79 S.Ct. 584, 3 L.Ed. 2d 572[1]. The conclusion of the court was (259 F.2d 637):

> "We hold that the admiralty doctrine of laches applies even though the suit is an action 'at law' on the civil side of the court * * *."

As Oroz involved a longshoreman's action against the shipowner, the rule of law as stated by the Second Circuit is persuasive authority in the absence of a conflict in Circuits. The dissenting opinion by Judge Moore is most effective, but we observe that Oroz has now become the law of the Third Circuit in Claussen v. Mene Grande Oil Company, S. A., 3 Cir., 275 F.2d 108, where the court expressly rejected defendant's contention that a claim within diversity jurisdiction filed on the civil side of the district court was barred by the state statute of limitations rather than by the admiralty doctrine of laches.

Without the benefit of a controlling decision from the United States Supreme Court or the Court of Appeals for the Fourth Circuit, this Court must consider the Second and Third Circuit rulings as substantially binding. If the matter were of first impression, it is not unlikely that this Court would arrive at a contrary conclusion. There is little merit, in the opinion of this Court, justifying decisions predicated on uniformity in considering the rights of seamen and longshoremen. Establishing two standards—one for maritime rights and the other for non-maritime rights—is, in itself, a far cry from uniformity. Furthermore, there are many examples of non-uniformity which have become a part of our maritime law. If a seaman is injured by a longshoreman's negligence, he may sue the stevedore, but the same privilege is not accorded the longshoreman if he is the one injured in a like manner. If a seaman and longshoreman are both killed by the negligent act of a crew member, the seaman's estate may resort to the Jones Act, whereas, the longshoreman's estate must look to the state death act with its attendant limitation on the amount of recovery. In this maze of confusion this Court believes that, if uniformity is desired, the final decision should rest with Congress but, because of Oroz and Claussen, the views of a district judge should yield to the more authoritative voices.

In other respects the Oroz decision supports many of the views herein. It agrees that a longshoreman cannot sue under the Jones Act (259 F.2d 638, footnote 1). It concurs in the view that the state limitation statutes provide the rule-of-thumb as to the presence or absence of prejudice and inexcusable delay. It states that, if the statute has run, prejudice by reason of inexcusable delay is presumed in the absence of a showing to the contrary[2]. It rejects the contention

1. It should be noted that the Second Circuit, although holding that the admiralty doctrine of laches was applicable in a civil action involving a maritime tort, also concluded that the action was time-barred under the principles of laches. Certiorari was sought by Oroz, the longshoreman. For this reason the legal effect of the denial of certiorari is nil.

2. In addition to the authorities cited to support this point in Oroz, see: Davis v. Nelson, 4 Cir., 285 F.2d 214, 215, an action instituted in admiralty in which the Fourth Circuit applied the same rule of presumption, but did not specifically state that the "possible applicable limitations period" was governed by Virginia law.

that a warranty of seaworthiness should be treated as an implied contract and specifically suggests that the breach thereof is a tort (259 F.2d 639). It points out that ignorance (of the longshoreman) is not a sufficient excuse to permit litigation of a stale claim (259 F.2d 640) citing Morales v. Moore-McCormack Lines, Inc., 5 Cir., 208 F.2d 218. It suggests that the question of laches is addressed to the sound discretion of the trial court. Czaplicki v. The SS Hoegh Silvercloud, supra.

We advert to the facts of the several pending cases in light of the principles discussed. In Logan v. San Fernando Compania, Lundy v. Albert Schjelderup, and Gatlin v. Transamerican Steamship Corporation, no hearings have as yet been conducted on the question of laches. The attention of counsel is directed to the fact that, whenever it appears from the face of the complaint or libel that the action is time-barred under the state statute, it is incumbent upon the plaintiff (or libellant) to *allege* and *prove* either facts supporting excusable delay on the part of plaintiff, or facts negativing a presumption of prejudice. Davis v. Nelson, 4 Cir., 285 F.2d 214. Upon appropriate amendment of pleadings, should plaintiffs be so advised, the Court will grant a hearing on the application of the doctrine of laches.

 In Fentress v. SS Pioneer Glen, the hearing on laches brought two witnesses before the Court. The independent witness, a fellow longshoreman, testified that the accident occurred on the Pioneer on December 10, 1957, at approximately 7:30 P.M., when libellant slipped on a greasy deck while assisting in pushing beams which were being moved from the hatch. He claims that there was a crewman present, but does not know his name and finally conceded that he was not certain of the man's identity. He further stated that the name of the vessel was the Pioneer at the time of the accident, although he later heard that the name had been changed. In fact, at the time of the alleged accident, the name of the vessel was American Inventor as libellant testified. The libellant related that he had hired his attorney on some date prior to June 25, 1959—a period well within two years from the date of the accident—and that his compensation had been cut off in September, 1958; that he had interviewed the Claims Examiner handling the case under the Longshoremen's & Harbor Workers' Act before seeing his attorney; that he interviewed the attorney "to see if he could help me"; that he thought the stevedoring company would take care of the claim against the "shipping company" and believed that the stevedoring company owned the ships which it serviced. This last statement is rather incredible when we note that libellant had been a longshoreman for 25 years, and this is so despite his limited fifth grade education. He concluded to file a law suit after the orthopaedic surgeon declined to rate his disability. He thereafter said that he decided to bring suit when he was injured. The compensation file reflects the representation by the attorney (who has also instituted this action in behalf of libellant) as early as June 25, 1959, but all of this information pertains to the claim against the stevedore and its compensation carrier. The foregoing facts do not justify a finding of excusable delay and, more particularly, do not overcome the presumption of prejudice. The United States Lines, as the owner of the vessel, denies any knowledge of the accident and asserts that the first notice of same was when process was served in the pending action. The libel must be dismissed with costs.

There remains for consideration the case of Dawson v. Fernley & Eger. Testimony has been presented touching upon the delay of two years and 360 days in instituting the action. Manifestly the plaintiff has no excuse to offer for the delay. Following his injury, which was not reported to any officer or member of the crew, the accident was reported to the stevedore boss [3] and plaintiff then returned to work. The vessel sailed that

---

3. Name of stevedore boss unknown. Referred to by plaintiff as "Mr. Chuck".

same afternoon and discharged the bags of fertilizer at Manila on August 25, 1957. Plaintiff testified that he was carrying a bag of fertilizer when he fell through a hole. It appears to be the practice in the lower holds to follow a process of "sealing" whereby the tank top, or bottom tanks, are covered with cargo battens, with dunnage placed over the battens and paper covering the dunnage to protect the cargo. The complaint alleges that plaintiff was "caused to slip and fall into a space between bags of cargo" and that the "cargo in No. 2 hatch was improperly and unsafely stowed in an unseamanlike manner". Plaintiff, in his testimony, makes no complaint with respect to improper or unsafe stowage of the bags of fertilizer. He stated that there was "plenty of light" where he was working. The gist of his action, if any he has, is that he was walking on top of the paper, away from the stowed bags, when he suddenly and without warning fell into a hole.

The plaintiff stated that the accident took place in the 'tween deck which, if true, would not call for the process of "sealing" as there were no bottom tanks to be covered. His pre-litigation version of the accident is that he "stepped into a hole between two bags" and turned his knee.

There were no officers or members of the crew in or near the No. 2 hatch when the accident occurred. Presumably, one of the mates was on deck serving as cargo loading officer. The evidence does not disclose whether the crew or stevedore placed the paper on either the 'tween deck or over the dunnage in the lower hold.

The first knowledge defendant had of the alleged accident was when the suit papers were served in July, 1960. The first information as to the details of the accident was acquired when plaintiff testified on discovery, which information, as noted, varies considerably from the allegations of the complaint.

Plaintiff related that there were six longshoremen in the No. 2 hatch. He could recall only two by name, they being Douglas and Tyson. An affidavit filed by the attorney for plaintiff lists the names and addresses of four longshoremen who were in the hatch, one of whom is Tyson. Douglas is not mentioned. The four longshoremen were not presented as witnesses. It appears from another affidavit that it is impossible to determine from the records the names of the particular longshoremen who worked on the M/V Ferncliff on the day of the accident, and that the register for the week ending July 21, 1957, contains the names of 165 longshoremen.

The Master and Chief Officer of the Ferncliff testified at the request of the defendant. The difficulty with defendant's position is that there is, at best, little or no prejudice apparent by reason of the delay. The presumption of prejudice exists, but this presumption may be overcome. While it is true that the matter would have been the subject of a cursory investigation by the ship's officers, it is unlikely that any extensive investigation would follow an accident involving a longshoreman. If the accident had been reported in the manner now testified to by the plaintiff, it would, of course, be of importance to examine the flooring through which plaintiff claims that he fell. On the other hand, if this action had been instituted at any time shortly after August 25, 1957, when the vessel arrived in Manila, it would have been timely brought and defendant could not complain as to lack of notice.

The Court feels that, despite the inexcusable delay, which is not discussed as it is too obvious, the only possible prejudice to defendant could result from the witnesses' lack of memory or the inability to locate other longshoremen who were in the hatch with plaintiff. Apparently the law requires that both inexcusable delay on the part of the plaintiff or libellant and prejudice to the defendant or respondent must exist before laches may be applied to bar the action. Prejudice is presumed when the limitation period as provided by the state statute has expired and, in such event, the bur-

den rests upon the plaintiff-libellant to rebut this presumption by facts alleged and proven. Inexcusable delay is not *per se* sufficient to bar the action but, when aided by the presumption of prejudice, the action must be dismissed. As was said in Gardner v. Panama R. Co., 342 U.S. 29, 31, 72 S.Ct. 12, 13, 96 L.Ed. 31:

> "Where there has been no inexcusable delay in seeking a remedy and where no prejudice to the defendant has ensued from the mere passage of time, there should be no bar to relief."

While Gardner does not expressly state that both inexcusable delay *and* prejudice must exist to bar the action, the interpretations placed upon the Gardner decision support this view. Point Landing, Inc. v. Alabama Dry Dock & Shipbuilding Co., 5 Cir., 261 F.2d 861, 865; McDaniel v. Gulf & South American Steamship Co., 5 Cir., 228 F.2d 189, 192; Morales v. Moore-McCormack Lines, Inc., 5 Cir., 208 F.2d 218. Delay *ipso facto* will not defeat the claim. The Fulton, 2 Cir., 54 F.2d 467, 469.

There is a further reason which may result in no prejudice being shown upon receipt of all of the evidence. On what the Court now has before it, there is every indication that the defendant may have an appropriate third-party action against the stevedore. While this fact, standing alone, would not justify any action deferring a ruling on the laches question until the trial on the merits, this case is of the borderline variety. In any event, the plaintiff's testimony will be the subject of an attack as to credibility. Viewing the evidence on laches in the Dawson case as a whole, the Court will enter an order deferring any ruling thereon until the trial on the merits. If it appears that there has been prejudice, either by reason of inability to locate witnesses or the failure of witnesses to recall the events of July 15, 1957, the plea of laches may then be sustained. At the option of the defendant, the testimony of the Master and Chief Officer may be used as evidence at the trial of the case as a condition imposed by reason of the deferment of any ruling.

Counsel in the several actions will present orders in accordance with this memorandum.