Clifton MUSE, Libellant,

v.

Herbert C. FREEMAN, in personam and
THE MISS CARRIE, in rem,
Respondents.

No. 543.

United States District Court
E. D. Virginia,
Newport News Division.

Aug. 18, 1961.

**68**

Sidney H. Kelsey, Norfolk, Va., for petitioner.

Vandeventer, Black, Meredith & Martin, Hugh S. Meredith, Norfolk, Va., for respondents.

WALTER E. HOFFMAN, District Judge.

On Monday, April 25, 1960, at 4:37 P.M., proctor for libellant filed a libel against the respondent, Freeman, in personam, and the vessel, Miss Carrie, in rem. The general allegation as to jurisdiction is set forth as follows:

"Libellant brings and maintains this libel pursuant to Title 46, U.S. C.A., Section 688, et seq. known as the Jones Act and further brings this libel under and claiming all benefits of the General Admiralty Law of the United States."

The first cause of action alleges that libellant's illness, which was a tubercular condition, was caused by the negligence of the defendant, Freeman, his agents and employees, *and* by the unseaworthy condition of the vessel Miss Carrie. The second cause of action is for maintenance.

Libellant was employed as a cook on board the fishing trawler Miss Carrie. His duties were intermittent from July 19, 1956, through April 19, 1957. On April 23, 1957, he was examined at the State Health Department, Hampton, Virginia, and a diagnosis of pulmonary tuberculosis, far advanced, was made [1]. Although the sputum test was initially negative, all other symptoms were apparent and libellant was told, on April 23, 1957, that he was suffering from tuberculosis and would have to be admitted to a hospital or sanitorium. The following day the sputum test was positive and he was sent to the United States Public Health Service Hospital on the same day where he was admitted. The diagnosis, made while libellant remained at this hospital until May 9, 1957, merely confirmed what was known on April 23, 1957. He was transferred to Manhattan Beach United States Public Health Serv-

---

[1] The discovery of tuberculosis was occasioned by an examination of a child livin the same house with libellant. When it was ascertained that the child had a turbercular condition, other occupants of the house were examined.

ice Hospital for further evaluation and treatment. He remained at the latter hospital until August 12, 1959, when he was discharged as fit for duty.

We are met at the outset with respondents' contention that the claim is time-barred under the provisions of the Jones Act, or otherwise barred by the admiralty doctrine of laches. As noted, the action was filed on April 25, 1960.

■ It is clear that any statute or period of limitations begins to run when the libellant was informed of his illness by a physician. Young v. Clinchfield Railroad Co., 4 Cir., 288 F.2d 499; Bradt v. United States, 2 Cir., 221 F.2d 325 (a tuberculosis case); Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282, 11 A.L.R.2d 252. Since libellant knew of his condition on April 23, 1957, this is the pertinent starting date.

■ As to the negligence action, it is abundantly clear that an action under the Jones Act must be instituted within three years. The statute is implacable in its terms. Claussen v. Mene Grande Oil Company, S.A., 3 Cir., 275 F.2d 108; Wounick v. Pittsburgh Consolidation Coal Company, 3 Cir., 283 F.2d 325. With respect to any rights under the Jones Act we have only to consider the effect, if any, of the closing of the Clerk's Office on Saturdays, pursuant to an order entered by District Judges Hutcheson and Bryan on July 25, 1952.

■ Irrespective of the determination of the rights, if any, of libellant under the Jones Act, we think it clear that the right to proceed under the allegations of unseaworthiness under general maritime law are subject only to the admiralty doctrine of laches and not to the implacable terms of the Jones Act. This is so even though the negligence action is eliminated. Claussen v. Mene Grande Oil Company, S. A., supra. As this action involves a seaman, as distinguished from a longshoreman, we think that the statute serving as the touchstone for the application of the principles of laches is probably the Jones Act, McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272, although the end result would not differ under this set of facts if the two-year Virginia statute were controlling. Cf. Dawson v. Fernley & Eger, D.C., 196 F.Supp. 816, under circumstances involving an action by a longshoreman. The same conclusion was reached in Wounick v. Pittsburgh Consolidation Coal Company, supra.

■ Under the same reasoning, and with greater force as the limitation period does not commence until maintenance falls due, the second cause of action seeking a recovery for maintenance is subject to like treatment. As the evidence submitted fails to disclose the due dates of the maintenance, the defense of laches will be overruled on this claim.

Turning to the effect of the order of Court closing the Clerk's Office, the same was incorporated in, and made a part of, the Local Rules effective July 17, 1954. Local Rule 20 provides:

"The office of the Clerk of the United States District Court for the Eastern District of Virginia is open to the public five (5) days a week, from Monday through Friday, between the hours of 9 A.M. and 5 P.M. [later changed to 8:45 A.M. and 4:45 P.M.], except on legal holidays, but the resident judge at any place holding court may, in order to conform to prevailing local daylight saving time, change the opening hour to 8 A.M., E. S. T. and the closing hour to 4 P.M., E. S. T."

■ Libellant contends that the closing of the Clerk's Office on Saturday automatically extended the time until the following Monday. We do not agree. Irrespective of the validity of the order closing the Clerk's Office to the public on Saturdays, the evidence is clear that deputy clerks, whenever called upon to do so, will accept legal documents for filing on Saturdays. Moreover, the Judge is generally available in his office on Saturdays due to the congested docket prevailing in this area. That the present action could have been filed on Saturday, April

23, 1960, cannot be denied. The complaint was obviously not mailed as there is no covering letter and, in addition, it was filed at 4:37 P.M. which abundantly establishes the fact that it was brought to the Clerk's Office. The complaint was likewise verified on Monday, April 25, 1960.

Rule 6(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. does not aid the libellant. It specifies:

"The last day of the period so computed is to be included, unless it is a Sunday or legal holiday in which event the period runs until the end of the next day which is neither a Sunday nor a holiday."

This rule has been held applicable to proceedings in admiralty. United States v. Cia Luz Stearica, 9 Cir., 181 F.2d 695. One authority, Joint Counsel Dining Car Employees Local 370, etc., v. Delaware L. & W. R. Co., 2 Cir., 157 F.2d 417, has expressed the view that Rule 6(a) is not applicable to the filing of an action, but the Supreme Court has intimated to the contrary. Union National Bank of Wichita, Kan. v. Lamb, 337 U.S. 38, 40, 69 S.Ct. 911, 93 L.Ed. 1190.

The Court cannot agree with libellant that Local Rule 20 should be given the effect of creating a "holiday." Black's Law Dictionary, 4th Ed., defines a "legal holiday" as:

"A day designated by law as exempt from judicial proceedings, service of process, demand and protest of commercial paper, etc. A day designated by legislative enactment for purpose within the meaning of term 'holiday'."

Legal holidays for federal employees do not include Saturdays. 5 U.S.C.A. § 87a. Saturday is classified as a "non-working day" for some federal employees. 5 U.S. C.A. § 87c. The right is also given the Executive to declare other holidays.

The legal effect of Local Rule 20 is that a "non-working day" has been established for the personnel in the Clerk's Office. This does not mean that the Clerk's Office is *officially* closed for the purpose of filing papers as, under 28 U.S.C.A. § 452, it is said:

"All courts of the United States shall be deemed always open for the purpose of filing proper papers, issuing and returning process, and making motions and orders."

Thus we note that, for the purposes aforesaid, the Court, including the Clerk's Office, is open 24 hours per day, 7 days a week.

Placing great stress upon Rutledge v. Sinclair Refining Co., D.C.S.D.N.Y., 13 F.R.D. 477, 479, libellant urges that the situation is identical. In holding that Rule 6(a) was applicable when the action was filed on a Monday, although the statute of limitations expired on a Sunday, it was said:

"The counter argument that 'district courts shall be deemed always open for the purpose of filing any pleading' overlooks the hard fact that the Clerk's Office in this district is not open for the filing of papers on Sundays or holidays, or for that matter, after noon time on Saturdays. Theoretically, the putative litigant might hunt up a Judge of this Court or the Clerk at his residence or elsewhere and file with one of them. But I think it unfair that substantial rights should depend upon the doubtful contingencies, which may arise in the attempt to do so. The vindication of the rights of a litigant should not turn either upon this circumstance or upon a narrow construction of the rules."

There is much merit to the language contained in the foregoing opinion of Judge Weinfeld. However effective the reasoning, this Court expresses the view that the matter must be clarified by an amendment to Rule 6(a) or by Congressional action. To judicially expand Rule 6(a) would, in effect, add Saturdays to the already existing Sundays and holidays.

The Court is not unmindful of the fact that Local Rule 20 is apparently in con-

flict with Rule 77(c), Federal Rules of Civil Procedure, which reads:

"The clerk's office with the clerk or a deputy in attendance shall be open during business hours on all days except Sundays and legal holidays. All motions and applications in the clerk's office for issuing mesne process, for issuing final process to enforce and execute judgments, for entering defaults or judgments by default, and for other proceedings which do not require allowance or order of the court are grantable of course by the clerk; but his action may be suspended or altered or rescinded by the court upon cause shown."

The history of Local Rule 20 has its origin in the enactment by the General Assembly of Virginia of § 17–41 of the Code of Virginia, 1950, which authorizes the closing of state court clerk's offices in certain cities and counties throughout Virginia. As this resulted in the cities of Norfolk, Newport News, Richmond and Alexandria being authorized to close the clerk's offices on Saturdays, there was a sharp decrease in the business of the federal court clerk's offices which previously had remained open until noon on Saturdays. The Saturday closing of banking institutions likewise had its effect. More important, however, is that the system of allowance of "compensatory time" for employees required the individual offices to deplete their rolls on other days in order to maintain the office open on Saturdays.

The closing of the Clerk's Office is an administrative matter. Presumably the order of July 25, 1952, closing the Clerk's Offices in the Eastern District of Virginia on Saturdays was with full knowledge of the provisions of Rule 77(c). It may be fairly assumed that the Administrative Office of the United States Courts is aware of this practice. Without concluding that the closing is legal and proper the effect of same is not material to libellant's rights. There was no at-tempt to file the libel on Saturday, April 23; nor was the libel mailed in order to assure its arrival on Saturday. As the closing of the Clerk's Office on Saturday cannot be read into Rule 6(a), it is of no consequence in this proceeding. For a discussion of an attempt to file a notice of appeal on a Saturday afternoon, subsequent to a noon closing hour fixed by order of court, see Casalduc v. Diaz, 1 Cir., 117 F.2d 915.

■■ Unaided by the presumptions brought into effect from the delay in instituting the action within the three-year period, there must exist both inexcusable delay *and* prejudice before the admiralty doctrine of laches may be applied.[2] Since the statute had run, the respondents are aided by the presumption of prejudice. The record reveals no excuse for the delay in instituting the action. Libellant was discharged as fit for duty on August 12, 1959, approximately eight months prior to the expiration of the statutory period of limitations. He did not testify at any of the hearings touching upon the question of laches.

■ The Court is not unmindful of the fact that laches should never be mechanically applied. The presumption is, however, automatically applied when the limitation period has expired. There must, of course, be some evidence to overcome the presumption of prejudice. With due regard for what view an appellate court may take of a situation here presented, and cognizant of the fact that a seaman is a ward of admiralty, let us review what transpired in this case. On September 28, 1960, the matter came on for hearing on all preliminary proceedings. Proctor for libellant stated that he did not understand that evidence would be presented that day on respondents' exceptions to libel asserting the defense of laches. By agreement, evidence was received, reserving to libellant the right to produce evidence in opposition thereto at a later day. At the time of the second hearing, proctor for libel-

---

2. See discussion of authorities on this point in Dawson v. Fernley & Eger, *supra.*

72

lant was ill and unable to attend court. Thereafter, on February 10, 1961, a further hearing was scheduled, at which time proctors stated that no additional evidence would be submitted. As the libellant had not amended his libel alleging excusable delay and the absence of prejudice, the Court, over vigorous objection of proctors for respondents, permitted said amendment to conform with the ruling in Davis v. Nelson, 4 Cir., 285 F.2d 214. The Court thereupon ordered a third hearing on the laches question on April 14, 1961, at which time the testimony was confined to a deputy clerk who gave the substance of the Saturday closing order.

At the initial hearing on September 28, 1960, the respondent, Freeman, testified as to the ownership of the vessel, the date libellant last served on the vessel, and the name of the master. No questions were propounded on cross-examination. The respondent, Freeman, is a local resident and could have been made available at any subsequent hearing. Other evidence at this hearing was restricted to a physician employed by the State Health Department.

In the file of this case there are certain interrogatories and answers thereto. Proctor for libellant *at no time* sought to introduce in evidence the answers to the interrogatories. These answers are to be treated as a part of the pleadings, but may not be considered as evidence in admiralty or civil cases unless presented as such. Baker, Carver & Morrell Ship Supplies v. Mathiasen, etc., 2 Cir., 140 F.2d 522; Hugo v. Hedger S. S. Corporation, 2 Cir., 142 F.2d 349, 351. Admittedly the answers to the interrogatories, if introduced in evidence, would be sufficient to justify either a finding of no prejudice or a deferment of any ruling on the question of laches until the trial on the merits. Without the answers to certain interrogatories, the record is devoid of any evidence rebutting the presumption of prejudice. It may be argued that the Court should now permit the introduction of the answers to interrogatories, but the question then presents itself as to what extent the Court should go in aiding a party litigant or his counsel. Libellant undoubtedly will contend that a two-day delay should be disregarded in applying the doctrine of laches. The short answer to this statement is that the presumption exists and, in legal significance, it makes little difference whether the delay was two days, two months, or two years in determining the existence of the legal presumption.

The exceptions to the libel will be sustained and the first cause of action dismissed. The matter will proceed to hearing on the maintenance claim as stated in the second cause of action.